786 So.2d 962 (2001)
Byron T. DASPIT
v.
Philip M. BARBER and USAA Casualty Insurance Company a/k/a USAA Property and Casualty Insurance Company.
Frank T. Scaturro and Byron T. Daspit
v.
Hamdi Zayed, Progressive Security Insurance Company and State Farm Insurance Company.
Nos. 2000-CA-1221, 2000-CA-1222.
Court of Appeal of Louisiana, Fourth Circuit.
April 11, 2001.
Writ Denied June 15, 2001.
*965 Raymond A. Milly, Metairie, LA, for plaintiff/appellant, Byron T. Daspit.
C. Gordon Johnson, Jr., James R. Nieset, Jr., Porteous, Hainkel, Johnson & Sarpy, New Orleans, LA, for defendants/appellees, USAA Casualty Ins. Co. and Philip Barber.
Renee' Clark McGinty, Renee' Clark McGinty & Associates, New Orleans, LA, for defendants/appellees, Hamdi Zayed and Progressive Security Ins. Co.
David P. Salley, Edward J. Rivera, Sessions & Fishman, L.L.P., New Orleans, LA, for defendants/appellees, State Farm Mutual Automobile Ins. Co.
Court composed of Judge JOAN BERNARD ARMSTRONG, Judge STEVEN R. PLOTKIN, and Judge DAVID S. GORBATY.
PLOTKIN, J.
Plaintiff Byron Daspit requests this court to enter a damage award, which the trial court denied after holding that both defendant drivers were 100 percent at fault in their accidents with Mr. Daspit.

Facts
Mr. Daspit worked at Southern Eagle Sales & Services, Inc. for twelve years as a diesel truck mechanical. He was involved in a work accident while changing tires in early 1996, in which he hurt his back. On July 9, 1996, he was involved in a car accident with defendant Philip Barber. Following the accident, Mr. Daspit was treated by his family physician, Dr. David Learned. However, Mr. Daspit continued to work for almost three months after the accident, until October 1, 1996, when his back "went totally out" after he had been bending over a car for several hours fixing its air-conditioning system.
After his back "went totally out," Mr. Daspit was sent to the company doctor, Dr. Joseph Tamimie, who deferred treatment to Dr. Learned. Dr. Learned referred Mr. Daspit to Dr. Robert Mimeles, an orthopedic physician. Dr. Mimeles referred him to Dr. Lucian Miranne, a neurosurgeon. Dr. Miranne performed a myelogram and then referred him to Dr. Daniel Trahant, a neurologist. Dr. Trahant performed an EMG and reported his findings to Dr. Miranne. Mr. Daspit wanted a second opinion, which he received from Dr. Melvin Parnell. Dr. Parnell began a conservative regime, and eventually performed a percuntaeous suction diskectomy on April 16, 1997.
As a result of his back injury, Mr. Daspit was unable to return to work for almost nine months. He had not yet returned to work when he was involved in a second car accident with Mr. Hamdi Zayed on August 19, 1997. The accident occurred at the intersection of Bonnabel Boulevard and the I-10 Service Road, each party claimed he had the right of way by virtue of a green light. Mr. Daspit was taken by ambulance to East Jefferson Hospital, where he was treated and released. Drs. David Aiken and Melvin Parnell provided additional medical treatment.
Mr. Daspit originally filed separate suits against Mr. Zayed and Mr. Barber and their respective insurers. On Mr. Daspit's notice, the cases were consolidated for trial. *966 The matters were trial before a jury, which found that both Mr. Barber and Mr. Zayed were 100% negligent in causing the accidents. However, the jury also found that Mr. Daspit was not injured as a result of either accident. Mr. Daspit appeals, asserting four assignments of error.

Loss of wages and future earning capacity
Mr. Daspit alleges that the trial court abused its discretion by granting a partial directed verdict in favor of the defendants on the issues of lost wages and loss of future earning capacity.
A motion for directed verdict may be granted when, after considering all of the evidence and making all reasonable inferences therefrom in the light most favorable to the mover's opponent, it is clear that the facts and inferences are so in favor of the movant that a reasonable person could not arrive at a contrary verdict. Burris v. Walmart Stores, Inc., 94-0921 (La.App. 1 Cir. 3/3/95), 652 So.2d 558, 561. Thus, if there is substantial evidence such that reasonable jurors exercising impartial judgment could reach a different decision, a motion for directed verdict should be denied. Cross v. Cutter Biological, Division of Miles, Inc., 94-1477 (La .App. 4 Cir. 5/29/96), 676 So.2d 131, 148. Furthermore, the trial court is given much discretion in the decision to grant a directed verdict. Lott v. Lebon, 96-1328 (La.App. 4 Cir. 1/15/97), 687 So.2d 612, 615. Thus, the standard of review on appeal is whether, viewing the evidence contained in the record, the court determines that reasonable people could not reach a different verdict. Id. The propriety of granting a directed verdict must be reviewed in light of the substantive law underpinning the motion. Cross, 676 So.2d at 148.
After a thoroughly reviewing the record in the light most favorable to Mr. Daspit and drawing all reasonable inferences favorable to him, we affirm the trial court's decision to grant the defendants' motion for a directed verdict. We find that Mr. Daspit failed to introduce any evidence to prove that he suffered a loss of income, either past or future, as a result of the accident with either of the defendants, such that reasonable men could not find in favor of the defendants.
Concerning the accident with Mr. Barber, the record evidence shows that Mr. Daspit continued to work and did not consult a physician concerning his back injury until almost three months after the accident, after his back "went totally out" as a result of his work activities. Concerning the accident with Mr. Zayed, Mr. Daspit had not been working for approximately nine months prior to that accident. In fact, in his deposition on June 26, 1997, only two months prior to the accident with Mr. Zayed, Mr. Daspit admitted that he was not capable of returning to work. Dr. Parnell also testified that as of approximately two months prior to the second accident, Mr. Daspit was not capable of returning to work as a diesel mechanic. He had informed Mr. Daspit that "any activity requiring prolonged bending, stooping or lifting would not be in his best interest," and that "instead of relying on his back it was better to start using his brain more." Thus, although Dr. Parnell also testified that after the accident with Mr. Zayed, Mr. Daspit was unable to work as a mechanic, he held that opinion prior to that accident as well.
Furthermore, Dr. David Aiken examined Mr. Daspit on February 25, 1999, and found no objective signs of injury to the back or neck. He testified that from a physical standpoint there seemed to be no reason why Mr. Daspit could not work at that time as a diesel mechanic. Thus, because there is no evidence in the record *967 from which a reasonable person could find that Mr. Daspit was unable to return to work as a result of the two accidents, we affirm the trial court's grant of the motion for directed verdict on the issues of lost wages and loss of earning capacity.

Physical injuries
Mr. Daspit alleges that the jury abused its discretion when it determined that he had suffered no injury and was therefore not entitled to any damages.
Appellate courts may not set aside a trial court's or jury's finding of fact unless such that finding is manifestly erroneous or clearly wrong. Rosell v. ESCO, 549 So.2d 840, 844 (La.1989). Therefore, even though the appellate court may feel that its evaluations and inferences are more reasonable than the fact finder's, evaluations of credibility and inferences of fact should not be disturbed upon review unless they were unreasonable. Cormier v. Comeaux, 98-2378 (La.7/8/98), 748 So.2d 1123, 1127.
Under Louisiana jurisprudence, plaintiffs bear the burden of proof as to all elements of damages in their lawsuits. Winston v. Flamingo Casino, 99-0209 (La. App. 4 Cir. 9/22/99), 746 So.2d 622, 624. Proof by direct or circumstantial evidence is sufficient when, taking the evidence as a whole, such evidence shows that the fact or causation sought to be proved is more probable than not. Jordan v. Travelers Ins. Co., 257 La. 995, 245 So.2d 151, 155 (1971). Plaintiffs are not required to conclusively exclude all other possible explanations for their injuriesthe standard is not proof beyond a reasonable doubt. Smith v. Toys "R" Us, 98-2085 (La.11/30/99), 754 So.2d 209, 213. However, when relying on circumstantial evidence, plaintiffs are required to "present evidence of circumstances surrounding the incident from which the fact finder may reasonably conclude that the particular defendant's negligence caused Mr. Daspit's injuries." Cay v. State, DOTD, 631 So.2d 393, 395 (La.1994).
Requiring that plaintiffs prove their injuries to a "reasonable medical certainty" holds plaintiffs to an artificially high standard, according to the Louisiana Supreme Court in Lasha v. Olin Corp., 625 So.2d 1002, 1005 (La.1993). The "reasonable medical certainty" standard requires plaintiffs to prove their case beyond a reasonable doubt, and also tends to preclude the trier of the facts from relying on evidence other than that of medical experts. Id. The proper standard is preponderance of the evidence. Thus, in the instant case, Mr. Daspit is required to show that he suffered injury that was more probably than not caused by the negligence of the defendants.
Defendants are presumed to take their victims as they find them, and are thus responsible for all natural and probable consequences of their conduct. Perniciaro v. Brinch, 384 So.2d 392, 395 (La.1980). The liability of the defendants in this case is therefore not mitigated by the fact that Mr. Daspit's pre-existing condition is responsible in part for the consequences of Mr. Daspit's injuries. If the either or both of the defendants' actions aggravated Mr. Daspit's pre-existing condition, the defendant responsible must compensate Mr. Daspit for the full extent of such aggravation. Lasha, 625 So.2d at 1003.
Following our review of the record, we find that Mr. Daspit failed to prove by a preponderance of the evidence that the negligence of either defendant was a cause in fact of his injury, or an aggravation of his pre-existing injuries. Mr. Daspit failed to produce any evidence or witnesses to show that he was in fact injured as a result of the second accident. None *968 of the doctors who testified were able to determine which incident caused Mr. Daspit's suffering following the accident. There is testimony from several of the doctors noting that Mr. Daspit's condition was actually improved only a few months after the accidentit was not worse than prior to the accident. Dr. Aiken examined Mr. Daspit in February 1999, and was unable to find any objective signs of injury. He also saw no reason why Mr. Daspit could not return to work as a diesel mechanic at that time.
While it may be possible that Mr. Daspit did suffer an aggravation of his injuries immediately following the accident, it is also reasonable for the jury to conclude that he was not injured at all. It is not our job to replace the reasonable determination of the jury simply because we believe that other reasonable conclusions are possible. The jury was able to view Mr. Daspit and the testimony of the witnesses first hand and make credibility determinations. In light of all of the evidence presented, the jury was not manifestly erroneous or clearly wrong in concluding that Mr. Daspit failed to prove by a preponderance of the evidence that he was injured as a result of the negligence of the defendants. For these reasons, we affirm the trial court's finding that Mr. Daspit suffered no injury.
As to the issue of damages, we first note that much discretion is to be granted the trial court in awarding damages, such that an appellate court should rarely disturb an award for general damages. Labouisse v. Orleans Parish School Board, 99-1684 (La.App. 4 Cir. 3/15/00), 757 So.2d 866, 869. Only when the award is beyond that which a reasonable trier of fact could assess for the particular injury sustained by the particular plaintiff at issue should an appellate court increase or reduce the award. Youn v. Maritime Overseas Corp., 623 So.2d 1257, 1261 (La. 1993). Because we agree that Mr. Daspit has failed to establish any causal connection between the negligence of the defendant and Mr. Daspit's injuries, we find no abuse of the jury's discretion in awarding Mr. Daspit no damages.

Introduction of medical bills
Mr. Daspit next alleges that the trial court abused its discretion when it ruled that he would not be permitted to introduce his medical bills.
The defendants objected to the introduction of plaintiff's medical bills on two bases: that Mr. Daspit failed to lay a foundation for the documents and that the documents consisted of hearsay. La.C.E. art. 802 states: "Hearsay is not admissible except as otherwise provided by this Code or other legislation." The applicable exception to this rule against hearsay in the instant case is La.C.E. art. 803(6), which excepts "records of regularly conducted business" from the prohibition against the introduction of hearsay evidence, if testimony is given by the custodian of the records or "other qualified witnesses." Mr. Daspit argues that under Guillory v. Shelter Mut. Ins. Co., 542 So.2d 850, 852 (La.App. 3d Cir.1989), his medical bills were admission because he proffered evidence of medical bills by provider and date. As noted in Guillory, when a plaintiff testifies to having received medical bills, and also testifies to the amount of the bills and explains the treatment received with regard to each bill, those medical bills are generally excepted from the hearsay rule. Id. The fact of the treatment was proven by Mr. Daspit's testimony, but not by the billsthe bills merely proved the cost of the treatment. According to Guillory, so long as the trial court finds that the bills are related to the incident in question, and there is no contradictory *969 evidence or reasonable suspicion that the bills are unrelated, Mr. Daspit's testimony is sufficient to support the inclusion of the bills in the record. Jimmerson v. Rearden, 98-1120 (La.App. 3d Cir.3/3/99), 736 So.2d 916, 919; Ledet v. National Car Rental System, 96-1270 (La.App. 3d Cir.6/4/97), 694 So.2d 1236, 1240; Jackson v. Tyson, 526 So.2d 398, 401 (La.App. 4 Cir.1988); Teague v. Barnes, 519 So.2d 817, 823 (La.App. 5 Cir.1988).
However, Guillory was decided prior to the enactment of La.C.E. art. 803(6). This court in Jones v. Trailor, 93-2144 (La.App. 4 Cir. 4/28/94), 636 So.2d 1112, 1120, noted that where there is no testimony from Mr. Daspit or the doctors regarding their respective medical bills, those bills are not admissible. In such a case, the proffer does not even meet the requirements of Guillory. Id. Under Jones, if the doctor who performed the services enumerated in a medical bill testifies as to those services, including testimony regarding which tests were run and what medications were prescribed, then both Guillory and La.C.E. art. 803(6) are satisfied. As noted in Lennix v. Labee, 94-748 (La.App. 5 Cir. 2/15/94), 652 So.2d 50, 54, where the provider testifies concerning Mr. Daspit's injuries and the treatment given, and where Mr. Daspit testifies to having received treatment from the physician regarding each bill and to having been responsible for the bills in the amounts listed, the medical bills are admissible.
Under Guillory, however, it is not necessary that each provider testify regarding the treatment given with respect to each bill. Where the medical bills are clearly connected to the accident at issue and where there is no substantial conflicting evidence to the contrary, testimony from Mr. Daspit regarding receipt of the bills and the treatment received with regard to each bill is sufficient to allow the introduction of the medical bills in order to prove the cost of the treatment. The defendants would have had the opportunity to crossexamine Mr. Daspit regarding the reasonableness or relevancy of those bills. If the trial court had determined that the bills were related to the accident in question, Mr. Daspit's testimony would have been sufficient to support introduction of the medical bills.
However, in the instant case, we find that the medical bills were properly excluded by the trial court. Mr. Daspit failed to establish a causal connection between the accident in question and any injury he alleged; therefore, the trial court had no basis for concluding that the bills were related to the accident. The record contains substantial evidence showing that the medical expenses incurred by Mr. Daspit could have been incurred as a result of some other injury. Even with the corroborating evidence of Mr. Daspit's physicians, no causal connection was established and thus the bills were properly excluded.

State Farm's actions
Mr. Daspit's fourth assignment of error is that the trial court was clearly wrong when it did not rule that State Farm Insurance had been arbitrary, capricious, and unreasonable in not tendering him sufficient funds to provide for his medical needs. The trial court did not take up this issue; however, the record reveals that Mr. Daspit was insured by an uninsured/uninsured (UM) policy with State Farm for up to $100,000.
One who claims penalties has the burden of proving that the insurer received "satisfactory proof of loss" in order to show that the insurer was arbitrary, capricious, or without probable cause. LSA-R.S. 22:658; McClendon v. Economy *970 Fire & Cas. Ins. Co., 98-1537 (La.App. 3d Cir.4/7/99), 732 So.2d 727, 730. To establish a "satisfactory proof of loss" in an uninsured motorist claim, the insured must establish that the insurer received facts which fully apprise the insurer that the owner of the other vehicle involved in the accident was uninsured or underinsured, that he was at fault, that such fault gave rise to damages, and he must establish the extent of such damages. Sanderford v. Lombard, 96-1171 (La.App. 4 Cir. 12/11/96), 685 So.2d 1162, 1165.
In this case, we find that Mr. Daspit did not carry his burden of proving that State Farm received "satisfactory proof of loss." Mr. Daspit never established that the either defendant's fault resulted in damages beyond those covered by that defendant's automobile insurance policy. The trial court did not reach this issue because the jury determined that Mr. Daspit suffered no injury and was entitled to no damages as a result of either accident. Thus, the trial court properly failed to award penalties against State Farm because Mr. Daspit never proved that either defendant's fault gave rise to damages, which is a clear requirement under Sanderford. Moreover, Mr. Daspit failed to show that the damages caused by the accident exceeded the limits of the automobile liability insurance of either defendant. Therefore, we find no merit in this assignment of error.

Conclusion
Based on the foregoing the judgment of the trial court in favor of the defendants and against Mr. Daspit is affirmed.
AFFIRMED.