DECUIR, Judge.
This is an appeal from a judgment finding that the defendant, Maryland Casualty Company, was the workers’ compensation carrier for the plaintiff, Linus Benoit d/b/a Benoit Fence Company, at the time Benoit’s employee was injured. We reverse.
FACTS
In 1989, Benoit approached “Mamou Insurance Agency” regarding workers’ compensation coverage. Mamou initiated the procedures required under the Louisiana Assigned Risk Plan, and Maryland was subsequently assigned to provide Benoit with workers’ compensation coverage. The initial policy issued by Maryland bore effective dates of March 2, 1989 through March 2, 1990. The policy was renewed at least three more times. A possible fourth renewal is the subject of this suit. The effective dates for the last undisputed renewal were March 2, 1992 through March 2,1993.
RThe timing of renewal payments is central to understanding of this case. The original policy premium was paid by cheek dated 5/5/89 issued by Mamou. The first renewal was paid by Benoit’s check dated 3/13/91 and negotiated by Maryland on 4/3/91. The second renewal was a partial payment by Mam-ou’s check dated 4/21/92 and negotiated on 4/23/92 by Maryland. An additional adjustment payment was made by Benoit’s check dated 9/1/92 and negotiated on 9/8/92 by Maryland. On 10/16/92, Maryland issued the latest of several cancellation notices issued over the years. This letter demanded the balance of unpaid premium for the 1992 policy before 10/26/92. However, the notice listed an incorrect balance owed and Benoit contacted Mamou to correct the matter. Be-noit and Mamou arrived at the correct amount; but for an unexplained reason, Be-noit issued a check dated 10/23/92 for approximately half of the agreed upon amount. The check was negotiated by Maryland on 11/12/92. The remaining balance for the policy period 3/2/92 through 3/2/93 was never paid. Benoit attempted to make partial payment of the fourth disputed renewal by check dated 4/2/93 and negotiated by Maryland on 5/12/93. Maryland attempted to return this premium to Benoit in July of 1993 because it claimed to have no policy in force. Benoit refused to cooperate in delivery of the refund.
On May 11, 1993, an employee of Benoit was injured. In June 1993, a claim for workers’ compensation was made against Benoit. In July 1993, Maryland determined that it had not renewed the policy for the March 2, 1993 through March 2, 1994 period due to late payment of the premium. Maryland consequently denied Benoit’s claim for workers’ compensation coverage in connection with the injury.
Subsequently, Benoit filed this suit. The trial court rendered judgment in favor of Benoit finding coverage, ordering reimbursement by Maryland of all payments ^arising from the workers’ compensation judgment and assessing attorney fees of $5,000.00 against Maryland. Maryland lodged this appeal.
COMPENSATION COVERAGE
By its first assignment, Maryland contends that the trial court erred in finding workers’ compensation coverage in May 1993 since the Maryland workers’ compensation policy was cancelled in October 1992. We agree.
La.R.S. 22:636(A)(4) provides that:
Any policy may be cancelled by the company at any time during the policy period for failure to pay any premium when due whether such premium is payable directly to the company or its agent or indirectly under a premium finance plan or extension *612 of credit, by mailing or delivering to the insured written notice stating when, not less than ten days thereafter, such cancellation shall be effective. Nothing in this Code shall mandate a separate notice of lapse for nonpayment of premium of a policy defined as provided by R.S. 22:1405(G).
It is undisputed that Maryland sent notice of cancellation for nonpayment of premium to Benoit on October 14,1992. It is also undisputed that Benoit received that notice by certified mail.
At the time of the notice, Benoit owed $789.00 in earned premium and owed an additional $822.00 to cover the remainder of the policy year. Therefore, Benoit needed to pay a total of $1611.00 to maintain the policy in force. The cancellation notice had a clerical error in the amount of premium due, however it is undisputed that Benoit contacted his agent and was aware of the proper balance due to maintain the policy in force. Despite this knowledge, Benoit sent a payment of only $810.00. We find no record of the remaining $801.00 ever being paid, nor has any party claimed to have made that payment.
Maryland received the $810.00 payment and applied it to the earned premium of $789.00 leaving a credit of $21.00 owed to Benoit. Maryland cancelled the policy and sent the $21.00 credit and a commission to Mamou in December, 1992. Mamou | ¿received the credit because Maryland’s records reflected that Mamou had made the initial renewal payment on the policy.
Benoit mailed a payment of $1500.00 in April 1993 in an attempt to renew the policy. Maryland received this payment and processed it. However, because the policy had been cancelled Maryland was unable to match the payment to an existing policy. Therefore, Maryland referred the matter to its accounting department for research and attempted to refund the payment. However, Benoit had changed addresses and declined to facilitate the refund.
Benoit bases his major argument in opposition to this assignment of error on this renewal payment. Benoit argues that Maryland had consistently acquiesced in late renewal payments and had alternatively waived its right to object or was prohibited from objecting based on some form of equitable estoppel.
The trial court was apparently convinced by this argument and thereby committed reversible error. Both Benoit and the trial court miss the central factual issue that renders questions of waiver and estoppel moot. That is, Benoit never paid the balance of the premium due for the policy year March 2, 1992 through March 2, 1993. Therefore, it was completely within Maryland’s underwriting discretion whether to renew a policy that had lapsed for nonpayment of premium. The fact that Maryland had sent cancellation notices in the past and accepted late payment without actually cancelling is of no moment. On no prior instance had Benoit failed to pay for the balance of the policy year.
The standard of review for a trial court’s finding of fact is manifest error. Stobart v. State, through DOTD, 617 So.2d 880 (La.1993). This court has a constitutional duty to review facts. Ambrose v. New Orleans Police Amb., 93-3099, 93-3110, 93-3112 (La.7/5/94), 639 So.2d 216. In fulfilling our constitutional obligation, we must review the record in its entirety and not just find some evidence Rto support or controvert the fact finder’s determinations. Stobart, 617 So.2d 880. After review of the entire record, the issue we should resolve is whether the fact finder’s conclusion is a reasonable one, not whether it is right or wrong. Id.
In the present case, we find that the trial judge’s conclusions are manifestly erroneous. Maryland clearly satisfied the requirements of La.R.S. 22:636(A)(4). Likewise, the evidence is clear that Benoit failed to make sufficient payments to maintain his policy in force.
ATTORNEY FEES
Maryland next contends the trial court erred in awarding attorney fees to Benoit. We agree.
It is well settled that attorney fees are awarded only when authorized by contract or statute. Steptore v. Masco Con *613 struction Company, 93-2064 (La.8/18/94), 643 So.2d 1213. “[I]f the insured hires an attorney to represent him in coverage disputes, he will have to bear those costs himself.” Id at 1218. Accordingly, we find the trial judge erred in awarding attorney fees in this ease.
For the foregoing reasons the judgment of the trial court is reversed. All costs of this appeal are taxed to appellee, Linus Benoit.
REVERSED.