TERRI F. LOVE, Judge.
_JjJn this action for damages, the plaintiff, Gus Rico, claims that the Sewerage and Water Board and the City of New Orleans are liable for damages sustained as a result of an accident allegedly cause by a manhole cover located at the 1500 block of Carondolet. After a bench trial, the trial court found the defendants liable and apportioned each fifty percent fault. The defendants lodged separate appeals asserting the trial court was manifestly erroneous in its finding of fact as to how the accident occurred; the trial court was manifestly erroneous assessing 50% liability to the City of New Orleans; in failing to apportion fault to the driver, Frank Varo-na; and in finding liability on the part of the Sewerage and Water Board of New Orleans; and in awarding only $150,000 in general damages; For the reasons assigned below, we affirm.

STATEMENT OF THE CASE AND PROCEDURAL HISTORY

On October 24, 2995, at approximately 4:00 a.m., a United Cab Company taxicab, driven by Frank Varona (“Mr. Varona”) allegedly hit a manhole cover at the 1500 block of Carondolet Street, New Orleans, Louisiana, causing the taxicab |ato come to a complete stop and resulted in Gus Rico (“Mr. Rico”), a front seat passenger, being thrown forward into the dashboard and windshield. Immediately following the accident, Mr. Varona called the United Cab Company and requested that an accident investigator come to the scene and that the taxicab company call the New Orleans Police Department (“N.O.P.D.”). The taxicab company’s insurance investigator/road-man, Mark Adolph (“Mr. Adolph”), arrived at the scene shortly after the accident to perform an inspection for the taxicab’s insurer. However, prior to the N.O.P.D.’s arrival at the scene of the accident, Mr. Rico complained of pain and was taken to Touro Emergency Room by Mr. Varona.
As a result of the accident and injuries sustained, Mr. Rico filed suit against the Sewerage and Water Board of New Orleans (“Sewerage and Water Board”), the City of New Orleans, Mr. Varona, and Patterson Insurance Company alleging that they were liable for the injuries he sustained as a result of the accident while a passenger in the taxicab owned by United Cab. Mr. Varona also filed suit as a result of the injuries he sustained from the accident, alleging that the Sewerage and Water Board and the City of New Orleans were liable for the injuries he sustained and damages arising out of the accident.
On June 28, 2000, Mr. Rico dismissed his claims against Mr. Varona and Patter *146 son Insurance Company and a trial on the merits proceeded regarding the claims of Mr. Rico. On July 7, 2004, a Consent Judgment was signed, finding judgment in favor of plaintiff, Frank Varona in the amount of $8,000.00, to be paid solely by the Sewerage and Water Board. Following a three-day trial on the merits, the trial court issued judgment from the bench in favor of Mr. Rico, assessing fifty percent (“50%”) liability to each of the public entities, the City of New Orleans and the Sewerage and Water Board. The trial court awarded Mr. | oRico general damages in the amount of $150,000, medical specials of $2,655.49, and prescription expenses of $6,826.18, together with judicial interest and court costs. It is from this judgment that all parties, Mr. Rico, the City of New Orleans and the Sewerage and Water Board separately appeal.[1]
On appeal, both appellees, the Sewerage and Water Board and the City of New Orleans, assert that the trial court erred in finding that the taxicab struck the manhole in question or that there was a condition, either of the street or the manhole at the location alleged, which caused any damage to Mr. Varona’s taxicab. The Sewerage and Water Board further asserts that the trial court erred in finding any liability on the part of the Sewerage and Water Board. Conversely, the City of New Orleans asserts that the trial court erred in assessing it 50% of liability to the City of New Orleans, when the evidence shows that the Sewerage and Water Board was responsible for the manhole cover. The City further avers that Mr. Varona should have been assessed some fault as a result of the accident. Mr. Rico’s appeal asserts that the trial court’s judgment insofar as ttle quantum for general damages was not reasonable and was too low.

STANDARD OF REVIEW

When findings of fact are based upon determinations regarding the credibility of witnesses, the manifest error standard demands that great deference be afforded to the trier of fact, because only the trier of fact can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener’s understanding and belief in what is said. Rosell v. ESCO, 549 So.2d 840, 844 (La.1989). It is clear from the transcript in the present case that credibility was made | ¿an issue at trial, and the trial court had an opportunity to consider the demeanor of the witnesses.
Appellate review of the trial court’s findings of fact requires us to determine if the trial court was manifestly erroneous. Stobart v. State Through Dept. of Transp. & Dev., 617 So.2d 880 (La.1993).

THE SEWERAGE AND WATER BOARD AND THE CITY OF NEW ORLEANS’ ASSIGNMENT OF ERROR

CAUSE OF THE ACCIDENT

The Sewerage and Water Board and the City of New Orleans aver that the trial court erred in finding that Mr. Varo-na’s taxicab struck the manhole in question, or that any condition existed which was responsible for the damage caused to Mr. Varona’s taxicab.
In its written Reasons for Judgment, the trial court provided that one of the defenses asserted in the instant case was with regard to the cause of the accident involving the taxicab. In light of the testimony *147 offered by the defendants to substantiate their claim that the accident did not occur as plaintiffs suggested, the trial Court specifically found this contention to be without merit. The trial court adjudged that “based upon the testimony of Mr. Varona taken with the investigation of both Mr. Adolph and Sergeant Mathews, as well as the timing of those investigations, the Court accepts this version of how the accident transpired as true.” The trial court further provided “[t]he Court notes that the defendants, through their expert, Ms. Pritchard, attempted to refute these facts; however for the reasons stated above, as well as the fact that Ms. Pritchard did not have the benefit of timeliness and other evidence as was pointed out at trial in reaching her conclusions, the court rejects her testimony as not credible.”
|sMr. Adolph arrived at the scene shortly after the accident to perform an inspection for the United Cab Company’s insurer. At the trial on the merits, he testified that he took photographs of what he observed, inspected the undercarriage of the vehicle with a flashlight, made drawings of the scene, and prepared an accident report. Mr. Adolph also testified that within an hour or so of the accident, he determined that the accident occurred when the undercarriage of the cab struck a protruding manhole cover. He further testified that he observed the fresh damage to both the manhole cover and the undercarriage of the taxicab, consistent with the description of the accident as reported by Mr. Varona.
The following day, Sergeant Avery, with the N.O.P.D., investigated the accident, which occurred in the 1500 block of Caron-dolet. Sergeant Avery testified that he examined the taxicab and the manhole cover at issue, and found that there was damage to both which was consistent with the description given by Mr. Varona regarding the accident. Sergeant Avery further testified that he was of the opinion that the manhole cover, which was protruding upward into the street, struck the undercarriage of the taxicab resulting in the accident involving Mr. Rico and Mr. Varona. Consistent with Mr. Adolph’s testimony, Sergeant Avery testified that he observed what appeared to be fresh scrapes and fresh damage to the taxicab’s undercarriage consistent with Mr. Varona’s version of how the accident occurred.
The trial court accepted Robert Lipp (“Mr. Lipp”) and Mary Ann Pritchard (Ms. Pritchard”) as experts. Plaintiffs expert, Mr. Lipp, an engineering professor at the University of New Orleans and qualified by the trial court as an accident reconstruction expert, testified that he observed the scene of the accident and noticed that the areas surrounding the manhole cover were depressed, some 1 ^directions more than others. He further testified that the manhole cover was flushed to the street on one side and the casing of the manhole cover was exposed on other sides. As it relates to the taxicab that was driven by Mr. Varona on the night of the accident, Mr. Lipp testified that he observed a large rip and damage to the undercarriage of the vehicle and that the steel was torn by the impact. He further opined that the damage he observed to the vehicle was consistent with hitting the side of the manhole cover that was investigated at the 1500 block of Carondolet Street and that the accident was a result of an existing combination of elements, the depression in the street and the raised manhole cover.
Defendant’s expert, Ms. Pritchard, mechanical engineer and admitted by the trial court as an accident reconstruction, testified that in preparation for the trial on the merits, she reviewed various memoranda forwarded by the Sewerage and Water Board, pictures and drawings of the scene *148 of the accident, Mr. Lipp’s deposition, report, and photographs and John Huer-kamb’s (“Mr. Huerkamb”), the Chief of Operation for the Sewerage and Water Board, deposition. She further testified that, like Mr. Lipp, she too visited the scene of the accident, however her visit occurred on the day of the trial on the merits; moreover, Ms. Pritchard’s testified that she did not inspect the vehicle herself, but only reviewed photographs of the damage to the vehicle and the photographs she reviewed only reflected the damage sustained to the vehicle’s undercarriage and the manhole cover. Ms. Pritchard was asked whether the documents she reviewed provided her with sufficient information to render an opinion, she testified that she would have preferred to have a copy of the Accident Report, as completed by the police officer and Mr. Rico’s medical records or a report from his treating physician although she did not think it would have changed her opinion. Ms. Pritchard also testified that |7she did not review Mr. Adolph’s accident report, picture or diagrams, which was the first report, pictures and diagram taken immediately following the accident. She further testified that in her opinion, the manhole cover could not have caused the straight area damage to the undercarriage of Mr. Varona's vehicle, because review of the damage captured in the submitted photographs would have to be caused by a sharp metal object that was straight.
In discounting the testimony of Ms. Pritchard, the trial court determined that Ms. Pritchard did not have all of the facts surrounding the case before the court. The trial court further opined, “she [Ms. Pritchard] did not have what I believe would have been important for her to help make a decision and render an opinion.” In its Reasons for Judgment, the trial court made credibility determinations, acknowledging that it accepted Mr. Lipp and Ms. Pritchard as experts in this case; however, the trial court found more credible evidence was available to the Court regarding how the accident occurred. In its reasons for judgment, the trial court opined that the testimony of Mr. Adolph and Sergeant Avery were credible and therefore accepted.
Accordingly, we cannot say that the trial court’s credibility determinations were manifestly erroneous. Applying the Rosell standard, we must defer to the trial court in accepting the testimony of Mr. Adolph and Sergeant Avery as to their testimony in support of the cause of the accident involving Mr. Rico and Mr. Varona.

THE SEWERAGE AND WATER BOARD AND THE CITY OF NEW ORLEANS’ ASSIGNMENT OF ERROR

ASSESSMENT OF FAULT

¡/(The Sewerage and Water Board further asserts that the trial court erred in finding any liability on the part of the Sewerage and Water Board. Conversely, the City of New Orleans asserts that the trial court erred in assessing 50% liability to the City of New Orleans, when the evidence shows that the Sewerage and Water Board was responsible for the manhole cover. The City further avers that Mr. Varona should have been assessed some fault as a result of the accident. The trial court’s assessment of fault and review of the allocation of percentages will not be disturbed on appeal absent a finding of manifest error. Toston v. Pardon, 03-1747 (La.04/23/04), 874 So.2d 791, 803.
Both defendants denied liability to the plaintiffs, contending that they had no notice of the condition of the street/manhole cover at issue and further aver even assuming, arguendo, that there was notice of the condition, there was no hazardous con *149 dition for which they were responsible which caused the accident and/or the plaintiffs’ injuries and/or damages. The record evidences several correspondences regarding complaints and work performed on the subsidence issue, and that both the Sewerage and Water Board and the City of New Orleans knew, had notice of an existing hazardous condition involving the 1500 block of Carondolet. As evidenced by the testimony of Mr. Huerkamb, the Chief of Operations for the Sewerage and Water Board and William Sewell (“Mr. Sewell”), a representative with the City Department of Streets, both defendants confirmed knowledge of the complaints and the problem which gave rise to the accident; however, each representative testified that they both believed that the other party was responsible for the area around the manhole cover.
Mr. Huerkamb testified that although the Sewerage and Water Board owns and controls that manhole cover, the responsibility for the condition of the street | fllocated around the manhole cover rests with the City of New Orleans; conversely Mr. Sewell testified that although the City is generally responsible for the streets, the Sewerage and Water Board is responsible for a six to eight foot diameter around a manhole cover, beginning at the center of the cover.
The trial court opined that based upon the testimony of the two representatives, it was clear that both defendants knew about the problem with subsidence around the manhole cover and that they were further aware that this subsidence caused the manhole cover to protrude into the roadway. Accordingly, we find no abuse of discretion in the trial court’s judgment. The trial court further opined that
“the testimony and evidence is such that this Court finds that the Sewerage and Water Board AND the City of New Orleans both had an obligation to correct the hazards in question and that their failure to do [sic] such, despite having knowledge of the existence of these hazards, created an unreasonable risk of harm thus [sic] making them equally liable to the plaintiff for his damages.”
It is evidenced in the record that the City of New Orleans owned Carondolet Street, which includes the 1500 block thereof. La. C.C. art. 2317.1, provides in pertinent part:
The owner or custodian of a thing is answerable for damage occasioned by its ruin, vice, or defect, only upon a showing that he knew or, in the exercise of reasonable care, should have known of the ruin, vice, or defect which caused the damage, that the damage could have been prevented by the exercise of reasonable care, and that he failed to exercise such reasonable care.
In accordance with La. C.C. art. 2317.1, because the City of New Orleans does not refute ownership of the street in question, the City of New Orleans is responsible to the damages caused by Carondolet Street, specifically because they possessed the 11flrequisite knowledge of an existing hazardous condition, which would result in damages.
We find, as did the trial court, that the Sewerage and Water Board owned or had custody of the manhole that is subject to the instant action and also became aware of the hazard that existed, as evidenced by the record. La. C.C. art. 2317 provides in pertinent part:
We are responsible, not only for the damage occasioned by our own act, but for that which is caused by the act of persons for whom we are answerable, or of the things which we have in our custody.
*150 Accordingly, despite their knowledge that a hazard existed on the 1500 block of Carondolet, the Sewerage and Water Board failed to take measures to warn the public. We do not find that the trial court was erroneous in assessing liability to the Sewerage and Water Board.

MR. RICO’S ASSIGNMENT OF ERROR

GENERAL DAMAGES

Mr. Rico’s appeal asserts that the trial court’s judgment for general damages was not reasonable and was too low. Throughout our review of the damages, we are mindful that factual findings of a trial court are subject to the manifest error standard of review on appeal. Stobart v. State Through DOTD, 617 So.2d 880, 882 (La.1993). The standard for appellate court review of a trial court’s award of general damages was discussed by the Louisiana Supreme Court in Youn v. Maritime Overseas Corp., 623 So.2d 1257, 1261 (La.1993). The Court stated:
The discretion vested in the trier of fact is “great”, and even vast, so that an appellate court should rarely disturb an award of general damages. Reasonable persons frequently disagree about the measure of damages in a particular case. It is only when the award is, in either direction, beyond that which a reasonable trier of fact could assess for the effects of the particular injury to the particular plaintiff launder the particular circumstances that the appellate court should increase or reduce the award.
See also Reck v. Stevens, 373 So.2d 498, 501 (La.1979).
A general damage award may not be disturbed without a showing that the district court abused its discretion. Coco v. Winston Ind,., Inc., 341 So.2d 332, 335 (La.1976). Only after making a finding that the record supports that the lower court abused its vast discretion can the appellate court disturb the award. Coco, 341 So.2d at 335. The discretion afforded the trier of fact to assess special damages is more limited than the discretion to assess general damages. Some special damages, such as medical and related expenses, are easily measured and accordingly, a plaintiff pleading a special damage must produce some evidence by which that loss can be reasonably measured. Eddy v. Litton, 586 So.2d 670, 675 (La.App. 2nd Cir.1991). See also, Kelty v. Brumfield, 96-0869 (La.App. 4 Cir. 3/12/97), 691 So.2d 242.
The initial inquiry is whether the award for the particular injuries and their effects under the particular circumstances on the particular injured person is clear abuse of the much discretion of the trier of fact. Gaspard v. LeMaire, 245 La. 239, 158 So.2d 149 (1963). The trial court found that Mr. Rico was unlikely to proceed to surgery given the length of time that has lapsed since the recommendation of surgery and the trial date. Accordingly, the trial court, in its Reasons for Judgment, opined that, in light of its observation, this was treated as a case involving “a herniated disc with continued ongoing pain, for which surgery has been recommended, [sic] though not accepted.”
A trier of fact has much discretion in the assessment of general damages. La.C.C. art. 2324.1. Before a Court of Appeal can disturb an award made by a h ¿trial court, the record must clearly reveal that the trier of fact abused its discretion in making its award. Morton v. Ray and Eckerd Drugs, 611 So.2d 841, 844 (La.App. 4th Cir.1992), citing Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1976). The record evidences that Mr. Rico complained of back pain and was diag *151 nosed as suffering from a herniated disc in his neck. To support his claim that the trial court abused its discretion in its award for general damages, Mr. Rico cites this Court’s decision in Koepp v. Sealand Service, Inc., 93-2568 (La.App. 4 Cir. 11/17/94), 645 So.2d 1269, in which we held that the trial court did not abuse its case discretion in awarding $400,000 in general damages to crew member of vessel who suffered injuries as a result of a shipping accident.
The plaintiff in Koepp, is distinguished from the plaintiff in the case sub judice. The plaintiffs physician in Koepp determined that the seaman was permanently unable to work in the future and therefore was prohibited from returning to gainful employment. The physician in Koepp also imposed numerous restrictions on the seaman, which necessitated drastic change in the type of activities in which the seamen could participate in and accordingly, the plaintiff was entitled to recover loss of future earnings.
Mr. Rico also cites this Court’s decision in Alonzo v. Silverman & Marks Plumbing Company, 93-1403 (La.App. 4 Cir. 07/14/93), 640 So.2d 876, in which we held that the trial court did not abuse its discretion in awarding $360,000 in general damages to the twenty-seven year old plaintiff who sustained two herniated discs in his lumbar spine, aggravation of two or possibly three discs in neck, who was out of work for eight months, permanently restricted from manual labor, from bending or lifting and other activities which he engaged in prior to the automobile accident. Although we do find that, following the accident, Mr. Rico complained |1sof back pain and was diagnosed as suffering from a herniated disc in his neck, which requires surgery, the present case is distinguished from the cases cited by Mr. Rico, insofar as the record is absent a showing that Mr. Rico’s physician imposed numerous restrictions on Mr. Rico’s activities; that his injuries necessitated a drastic change in the type of activities that Mr. Rico may not participate in; or that Mr. Rico’s injuries resulted from multiple herniated or aggravated discs located in the lumbar spine, neck, a loss of employment opportunities and necessitated a change in profession.
Comparable cases in which the plaintiffs have sustained injuries analogous to those of Mr. Rico have awarded general damages vary generally between $100,000 to $250,000. In Morton, 611 So.2d 841, this court found that the trial court’s award of $350,000 was excessive so as to constitute an abuse of discretion and decreased the award to an amount that “is the maximum which would not constitute such abuse. Therefore, we reduce the general damage award to $250,000.” Morton, 611 So.2d at 845. The plaintiff in Morton, a store security guard, was negligently injured when a store employee grabbed him from behind and pulled him backward, causing aggravation of Mr. Morton’s pre-existing ruptured disc and disc herniation for which his physicians previously discussed the possibility of disc fusion. However, as a result of the injury he sustained as a security guard, Mr. Morton’s pre-existing back problems became symptomatic and Mr. Morton underwent a partial laminectomy at L4 and L5, removal of disc material at L5, and a fusion of L4 to the sacrum. The trial court awarded Mr. Morton $350,000 in general damages and on appeal, this Court found the amount excessive and that the trial court abused its discretion. Accordingly, this Court | udecreased the award to $250,000, an amount that would be the maximum amount which would not constitute such an abuse.
In Davis v. Sewerage and Water Board, 555 So.2d 664 (La.App. 4th Cir.1989), four *152 people were injured in an automobile accident when the automobile entered into a hole that had been dug in a street to make sewer repairs. In Davis, one of the plaintiffs, Anthony Alexander, suffered from a laceration of the lower lip, broken incisor, ruptured lumbar disc, herniated disc, underwent partial disk removal, was faced with the possibility of future surgery, was ordered by surgeons not work or lift and was hospitalized. As a result of the accident and injuries, the trial court awarded $100,000 for general damages to Alexander. On appeal, this court held that the awards of general damages were not an abuse of discretion, despite the passengers’ claim that the damages were too low.
In the present ease, Dr. John D. Olson testified that Mr. Rico suffered from high blood pressure, obesity, hypertension, and vascular disease, which precluded surgical intervention. The trial court, in awarding Mr. Rico general damages, adjudged that Mr. Rico elected not to undergo surgery as of the date of trial and found that, after considering the potential complications due to his pre-existing health, it was not unreasonable that he elected to forego surgery. Absent a finding that the trial court abused its vast discretion, we cannot say that the trial court was manifestly erroneous in its judgment awarding Mr. Rico general damages in the amount of $150,000.

DECREE

For the foregoing reasons, we affirm the judgment of the trial court.
AFFIRMED.

. On April 27, 2005, this Court issued an order that the pending appeals 2005-0183, lodged by the Sewerage and Water Board; 2005-0173, lodged by the Sewerage and Water Board; and 2005-0414, lodged by Mr. Rico, be consolidated with the pending appeal 2004-2006, lodged by the City of New Orleans.